Kamran **NAZARIAN** and Faranak Nazarian, Plaintiffs,

v.

**COMPAGNIE NATIONALE AIR FRANCE**, Homeric Tours, Inc., M.B. Franzetti, The Republic of France, Service Central de la Police de L'Air e des Frontieres and "John Doe" and "Jacques Doe" being police officers of the defendant Service Central de la Police de L'Air et des Frontieres whose names are unknown to plaintiffs, Defendants.

No. 96 Civ. 7173 (PKL).

United States District Court, S.D. New York.

Jan. 9, 1998.

Andrew J. Spinnell, New York City, for Plaintiffs.

Haight Gardner Holland & Knight, a Law Office of Holland & Knight, LLP, New York City (Randal R. Craft, of counsel), for Defendant Compagnie Nationale Air France.

### OPINION AND ORDER

LEISURE, District Judge.

Defendant Compagnie Nationale Air France ("Air France" or "defendant") moves for dismissal of this action pursuant to Rules 12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure, asserting a lack of subject matter jurisdiction, a lack of personal jurisdiction over the defendant, and plaintiffs' failure to state a claim upon which relief can be granted. Plaintiffs oppose the motion of Air France, but move the Court, in the event that Air France's motion is granted, to stay the proceedings until the plaintiffs have the opportunity to challenge the terms of Air France's filed tariff with the United States Department of Transportation. For the reasons stated below, the defendant's motion is granted in part and denied in part, and the plaintiffs' motion is denied.

### BACKGROUND

The following facts are taken from the allegations in the Complaint,[1] which must, for the purposes of this motion, be taken as true. On or before September 10, 1995, plaintiffs, Iranian nationals residing as permanent resident aliens in the United States, purchased two round-trip tickets from Air France for travel between New York City and Athens, Greece, connecting through Paris, France. Plaintiffs purchased the tickets from a travel agent on Long Island, New York, and planned the trip as their honeymoon.

Following their visit to Greece, plaintiffs intended to return to New York on September 22, 1995. Their flight from Greece was delayed, and they missed their connection in Paris. At the Charles De Gaulle Airport in Paris, M.B. Franzetti,[2] a manager for Air France, met the plaintiffs and informed them that the next flight to New York was the following afternoon. Franzetti then told the plaintiffs that Air France would pay for one night's accommodation in a luxury hotel in Paris, since the plaintiffs were newlyweds and their flight schedule was disrupted.

After plaintiffs agreed to this arrangement, Franzetti took their passports and return tickets in order to obtain temporary visas for the couple. Franzetti then had the Nazarians taken to an area of the airport where French immigration officials issue temporary visas. He left the couple alone in line even though they do not speak French.

The French officials denied the application for temporary visas because the Nazarians are Iranians, and arrested them. Officers of the Service Central de la Police de L'Air et des Frontieres (the "Police") then transported the plaintiffs in an armored truck to a locked holding room and denied them food, drink, and the use of a telephone. In the holding room, two male Police officers searched the plaintiffs. When Kamran Nazarian protested that a female officer should search his wife, the officers assaulted him in front of his wife by throwing him against a wall. The Police also pushed a chair into Faranak Nazarian, causing injury and distress.

The Police officers then moved the plaintiffs to a different cell, where they went without food, drink, and the use of a bathroom for the entire night. The Police transported the Nazarians to the airport the next morning, released them at the Air France ticket counter, and returned their tickets, passports, and green cards. The Nazarians then returned to New York on an Air France flight that afternoon.

Plaintiffs assert several claims in their Complaint against a number of defendants. Plaintiffs claim that Air France acted negligently by taking their tickets and passports and leaving them at the immigration area,

---

1. On February 26, 1997, plaintiff filed an Amended Complaint. For purposes of this motion, the Court considers the facts as alleged in the Amended Complaint.

2. Franzetti was a named defendant in this action, but the plaintiffs have since dropped all claims against him.

particularly because they do not speak French. Plaintiffs argue that this conduct by Air France breached its duty of care in providing safe passage. The plaintiffs also contend that Air France breached an express promise made by Franzetti, its employee, that Air France would secure temporary visas and provide for overnight lodging and meals. Each plaintiff also seeks damages for false imprisonment, false arrest, intentional infliction of emotional distress, and loss of consortium against Air France, the Republic of France, the Police, and John Doe and Jacques Doe, unknown Police officers.

## DISCUSSION

### I. *Foreign Sovereign Immunities Act*

The Foreign Sovereign Immunities Act ("FSIA") provides the exclusive source of subject matter jurisdiction over claims in United States courts against foreign states and their agencies or instrumentalities. *See Republic of Argentina v. Weltover,* 504 U.S. 607, 610–11, 112 S.Ct. 2160, 2163–64, 119 L.Ed.2d 394 (1992). Title 28, United States Code ("U.S.C."), Section 1330 provides:

> The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

Thus, a foreign state, its agents, and its instrumentalities are presumptively immune from suits in the federal courts unless a plaintiff demonstrates that the claim falls within a statutory exception to immunity. *See* 28 U.S.C. § 1604; *see also Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 488–89, 103 S.Ct. 1962, 1968–69, 76 L.Ed.2d 81 (1983); *Seisay v. Compagnie Nationale Air France,* 1997 WL 431084, *4 (S.D.N.Y. July 30, 1997) (Keenan, J.).

The Republic of France owns the majority of the shares of Air France, making Air France an instrumentality of a foreign state under 28 U.S.C. § 1603(b)(2). *See Seisay,*

1997 WL 431084 at *4. Air France therefore is entitled to sovereign immunity to the same extent as is France itself. *See id.* The parties agree that if any exception to sovereign immunity is applicable, it is the commercial activity exception, 28 U.S.C. § 1605(a)(2), which provides:

> (a) A foreign state shall not be immune from the jurisdiction of the courts of the United States or of the states in any case—
>
> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;
>
> . . . .

The parties disagree, however, as to whether Air France falls into the commercial activity exception to the FSIA.

### II. *Clause one of the Commercial Activity Exception*

Plaintiffs argue that the Court has jurisdiction over Air France pursuant to the first clause of § 1605(a)(2), which provides that a foreign state is not immune from the jurisdiction of the federal courts where "the action is based upon a commercial activity carried on in the United States by the foreign state." "Commercial activity," as used in § 1605(a)(2) means "activity carried on by such state and having substantial contact with the United States." 28 U.S.C. § 1603(e). Commercial activity may be "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). Certainly, Air France conducts business in the United States, and more importantly, the Nazarians purchased their Air France tickets in the United States. So, this Court has jurisdiction over those claims that are "based upon" the commercial activity of Air France in the United States.

The Supreme Court explained the meaning of "based upon" in *Saudi Arabia v. Nelson,*

507 U.S. 349, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993). In that case, Nelson was an American recruited in the United States to work in a Saudi hospital. After Nelson advised hospital workers of certain unsafe conditions, the Saudi government arrested and tortured him. Nelson and his wife then sued Saudi Arabia in a United States district court for the injuries suffered as a result of the arrest and torture, claiming that the court had jurisdiction under the first clause of § 1605(a)(2).

The Supreme Court held that "based upon" is "read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." *Nelson*, 507 U.S. at 357, 113 S.Ct. at 1477; *see also Santos v. Compagnie Nationale Air France*, 934 F.2d 890, 893 (7th Cir.1991) ("An action is based upon the elements that prove the claim, no more and no less. If one of those elements consists of commercial activity within the United States or other conduct specified in the [FSIA], this country's courts have jurisdiction.") The Supreme Court then determined that none of Nelson's tort claims were "based upon" the alleged commercial activity in the United States, (i.e., the recruitment of Nelson in this country). *See id.* at 358, 113 S.Ct. at 1477. The Court further stated that although the commercial activity in the United States "led to the conduct that eventually injured the Nelsons," it did not form the basis of the plaintiffs' claims. *Id.*

In sum, this Court has subject-matter jurisdiction over any claims made by the plaintiffs in which the elements of the claim require proof of Air France's commercial activity in the United States. *See Seisay*, 1997 WL 431084 at *6. Generally, this proof comes in the form of some duty owed to the plaintiff as a result of defendant's commercial activity in the United States. *See Santos*, 934 F.2d at 893. Therefore, in order to determine if this Court has jurisdiction, the Court must analyze the elements of each claim and determine if any of them require proof of Air France's commercial activity in the United States.

### A. Plaintiffs' Claims of False Imprisonment

A claim for false imprisonment requires proof of the following elements: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was aware of the confinement, (3) plaintiff did not consent to the confinement, and (4) the confinement was not privileged. *See King v. Crossland Savings Bank*, 111 F.3d 251, 255 (2d Cir.1997) (citing *Broughton v. State*, 37 N.Y.2d 451, 373 N.Y.S.2d 87, 335 N.E.2d 310, 314 (1975)); *see also Seisay*, 1997 WL 431084 at *6. None of these elements require proof of Air France's commercial activity in the United States. For false imprisonment claims, the location of the purchase of an airline ticket is irrelevant. The Nazarians' allegations of false imprisonment therefore are not based upon Air France's commercial activity in the United States. Accordingly, this Court lacks jurisdiction to hear these claims and they are dismissed as to defendant Air France.

### B. Plaintiffs' Claims of False Arrest

Closely related to false imprisonment is false arrest. In order to hold a defendant liable for false arrest, a plaintiff must show that the defendant or its employees did more than merely provide information to the police. *See King*, 111 F.3d at 257 (citing *DeFilippo v. County of Nassau*, 183 A.D.2d 695, 583 N.Y.S.2d 283, 284 (1992)). Additionally, the mere identification of a potential culprit does not give rise to liability. *See King*, 111 F.3d at 257 (citing *Stearns v. New York City Transit Authority*, 24 Misc.2d 216, 200 N.Y.S.2d 272, 276 (Sup.Ct. 1960)). Therefore, as an initial matter, Air France did not "arrest" the Nazarians. In any event, as with plaintiffs' claims for false imprisonment, none of the elements of false arrest require proof of the commercial activity of Air France in the United States. Therefore, these claims, too, are not based upon commercial activity in the United States and are dismissed for lack of subject-matter jurisdiction.

### C. Plaintiffs' Claims of Intentional Infliction of Emotional Distress

Under New York law, the tort of intentional infliction of emotional distress has

four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. *See Bender v. City of New York,* 78 F.3d 787, 790 (2d Cir.1996) (citing *Howell v. New York Post Co.,* 81 N.Y.2d 115, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699, 702 (1993)). Again, claims that Franzetti intentionally inflicted emotional distress on the plaintiffs do not require proof of Air France's commercial activity in the United States. That the plaintiffs bought their tickets in New York is irrelevant to proof of this tort. Indeed, the plaintiffs need not prove that they bought airline tickets, or that Air France conducts any business in New York, in order to recover for intentional infliction of emotional distress. Plaintiffs' claims, therefore, are not based upon Air France's commercial activity in the United States. Accordingly, the Court lacks subject-matter jurisdiction; these claims, too, are dismissed as to defendant Air France.

### D. *Plaintiffs' Claims for Breach of Express Promise*

██ Plaintiffs also seek to recover from Air France as a result of Franzetti's promise of hotel accommodations in Paris. The Court does not have occasion to determine if Franzetti's representations form a legally enforceable agreement between the Nazarians and Air France. Even if the parties formed a binding agreement, this claim fails for the same reasons as those previously discussed: the cause of action does not require proof of Air France's commercial activity in the United States. For purposes of a cause of action for breach of express promise, plaintiffs need not show that they purchased their tickets in America, nor that Air France does business in the United States. These concerns are irrelevant. Plaintiffs' claims are thus not based upon a commercial activity in the United States; the Court lacks subject-matter jurisdiction over the cause of action and these claims are dismissed.

### E. *Plaintiffs' Claims of Negligence*

██ The Nazarians also argue that Air France was negligent in creating the situation in which the events at issue occurred. In order to make a *prima facie* case of negligence, a plaintiff must show that: (1) the defendant owed the plaintiff a cognizable duty of care, (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of that breach. *See Stagl v. Delta Airlines, Inc.,* 52 F.3d 463, 467 (2d Cir.1995) (citing *Solomon v. City of New York,* 66 N.Y.2d 1026, 499 N.Y.S.2d 392, 489 N.E.2d 1294 (1985)). By selling its tickets to the Nazarians in New York, Air France created a duty of reasonable care in providing safe passage. *See Levy v. American Airlines,* 1993 WL 205857, *8 (S.D.N.Y.1993); *see also Santos,* 934 F.2d. at 894; *O'Leary v. American Airlines,* 100 A.D.2d 959, 475 N.Y.S.2d 285, 288 (1984). Thus, any claim of negligence against Air France would require proof of this duty, which exists as the result of commercial activity in the United States. Air France therefore is not immune from these negligence claims and the Court has subject-matter jurisdiction to hear them.[3]

### III. *Applicable Standard Under Rule 12(b)(6)*

In deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true the allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Kaluczky v. City of White Plains,* 57 F.3d 202, 206 (2d Cir.1995). The Court cannot grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The key issue in a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

---

3. It is important to note, however, that 28 U.S.C. § 1330 gives the district courts original jurisdiction over *nonjury* civil claims, such as these, that are not entitled to immunity under 28 U.S.C. §§ 1605–1607. In their Complaint, the plaintiffs demand trial by jury. By the terms of the statute, a jury is not available to them. *See Ruggiero v. Compania Peruana De Vapores Inca Capac Yupanqui,* 639 F.2d 872, 875–76 (2d Cir.1981) (Friendly, J.).

support the claims." *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996) (internal citations omitted).

### IV. *Plaintiffs' Claims of Negligence*

The Court determines, *supra,* that it has subject-matter jurisdiction over the causes of action alleging negligence on the part of Air France. However, defendant Air France also moves this Court to dismiss plaintiffs' action under Rule 12(b)(6), for failure to state a cause of action upon which relief can be granted.

■ Plaintiffs allege several negligent acts on the part of Air France. First, they claim that Air France was negligent in the operation of its flight schedule, which resulted in the Nazarians missing their connecting flight to New York. However, the Airline Deregulation Act (ADA) expressly preempts states from "enact[ing] or enforc[ing] any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier...." 49 U.S.C. § 41713(b)(1) (formerly 49 U.S.C.App. § 1301(a)(5)). While the preemptive effect of § 41713(b)(1) is broad, it is not unlimited. The Supreme Court has noted that "[s]ome state actions may affect [airline services] in too tenuous, remote or peripheral a manner to have a preemptive effect". *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 390, 112 S.Ct. 2031, 2040, 119 L.Ed.2d 157 (1992) (internal quotation marks omitted). *Morales* teaches that the ADA broadly preempts any laws that relate to rates, routes or services, but the decision does not define "services". *See Stagl v. Delta Air Lines, Inc.,* 849 F.Supp. 179, 181 (E.D.N.Y.1994) *rev'd on other grounds,* 52 F.3d 463 (2d Cir.1995).

In *Trinidad v. American Airlines, Inc.,* 932 F.Supp. 521 (S.D.N.Y.1996), Judge Shira A. Scheindlin provided a detailed analysis of those actions that courts have determined are preempted by the ADA and those that are not. Judge Scheindlin explained that claims of personal injuries sustained during flights do not relate to "services". *See id.* at 525–526 (collecting cases). However, cases that involve ticketing, boarding, in-flight services, or the implementation of airline poli-

cies, such as "bumping" of passengers, denial of boarding, and segregation of smoking passengers, relate to services and are preempted. *See id.* at 526.

In the instant case, the Nazarians claim that Air France was negligent in the operation of its flight schedule, which caused the plaintiffs to miss their connecting flight in Paris and led to their injuries at the hands of the Police. As the Nazarians arrived in Paris without any injury, the crux of this portion of their negligence claim is simply that Air France delayed them. Following Judge Scheindlin's analysis in *Trinidad,* the Court holds that this claim is analogous to those that are properly classified as related to service and therefore is preempted by the ADA. Any portion of plaintiffs' claim that alleges that Air France was negligent in the operation of its flight schedule is dismissed.

■ At the heart of the remainder of plaintiffs' negligence cause of action is the conduct of Franzetti at the Paris airport. The Nazarians contend that the actions of Franzetti (confiscating their tickets and passports, then leaving them alone at the immigration site even though they do not speak French, which led to their ordeal with the Police and their injuries) were negligent. At this stage, the Court must determine only if any facts exist that would allow plaintiffs to recover. In *Stagl,* 52 F.3d at 470, the United States Court of Appeals for the Second Circuit concluded that "it is particularly appropriate to leave a finding of negligence to the [finder of fact], ... because of the idiosyncratic nature of most tort cases...." (quoting *Havas v. Victory Paper Stock Co.,* 49 N.Y.2d 381, 426 N.Y.S.2d 233, 236, 402 N.E.2d 1136, 1139 (1980)). The Court finds that plaintiffs have stated a claim sufficient on its face to withstand a motion to dismiss under Rule 12(b)(6). Plaintiffs' cause of action alleging negligence on the part of Air France survives insofar as the claim is based on the conduct of Franzetti at the Paris airport.

### V. *Plaintiffs' Motion for a Stay of the Proceedings*

■ Plaintiffs move the Court to stay the proceedings as to those claims that are dis-

missed pending plaintiffs' challenge of the validity of Air France's filed tariff before the United States Department of Transportation. The Court does not use the terms of Air France's tariff as the basis for the dismissal of any claims. Therefore, plaintiffs' motion is denied.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss is HEREBY GRANTED in part and DENIED in part. Plaintiffs' motion for a stay of the proceedings is HEREBY DENIED. The parties are directed to appear at a pre-trial conference in Courtroom 18B at 500 Pearl Street on February 6, 1998, at 11:00 a.m.

**SO ORDERED.**